UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GARDEN CITY BOXING CLUB, INC.,
as Broadcast Licensee of the November 27, 2004
Barrera/Morales Program,

                        Plaintiff,                    **MEMORANDUM and ORDER**

       -against-

                                                          05-CV-3712 (SLT)(SMG)

CARLOS M. GUERRA, Individually and d/b/a
CEVICHERIA LOS GUERRA RESTAURANT
a/k/a CEVICHERIA LOS GUERRA, and
CEVICHERIA LOS GUERRA RESTAURANT
a/k/a CEVICHERIA LOS GUERRA,

                        Defendants.
-----------------------------------------------------------------x

**TOWNES, United States District Judge:**

       This is one of eight separate actions which have been brought pursuant to 47 U.S.C. §§ 553 and 605 against defendant Carlos M. Guerra, individually and doing business as Cevicheria Los Guerra, by franchised cable television operators alleging that Guerra unlawfully intercepted and exhibited the closed circuit telecasts of sports events to patrons at Cevicheria Los Guerra Restaurant (the "Establishment"). In this case, plaintiff Garden City Boxing Club, Inc., alleges that it contracted with a boxing promoter to obtain the exclusive license to exhibit within the United States the telecast of a November 27, 2004, boxing program (the "Program"), but that defendant Guerra exhibited the Program at the Establishment without plaintiff's authorization.

       As in the other seven actions, neither Guerra nor Cevicheria Los Guerra Restaurant has filed an answer or otherwise responded to the complaint, and a default has been entered against them. Plaintiff now moves for a default judgment, seeking statutory damages of up to $10,000 pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II); enhanced damages of up to $100,000 pursuant to 47 U.S.C. §605(e)(3)(C)(ii); and costs and attorneys' fees. For the reasons set forth below,

plaintiff's motion is granted and this Court directs the Clerk of Court to enter judgment in favor of plaintiff and against defendants, jointly and severally, in the amount of $10,161.75.

*The Consequences of Defendants' Default*

"Where, as here, 'the court determines that [a] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). Accordingly, by defaulting in this case, defendants have conceded, *inter alia*, that they (1) "willfully violated 47 U.S.C. § 605(a)," Amended Complaint at ¶ 21, and (2) "willfully violated 47 U.S.C. § 553." Amended Complaint at ¶ 35.[1]

Although defendants have admitted liability under both § 605 and § 553, plaintiff "can recover under only one statute." *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 CV 1042 (GBD) (RLE), 2006 WL 728408, at *1 (S.D.N.Y. Mar. 20, 2006) (Report and Recommendation of Ellis, M.J.) (citing *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)). In this

---

[1]Plaintiff's pleadings also allege upon information and belief that defendants violated 47 U.S.C. § 605(e)(4) by "modif[ying] a device or utiliz[ing] equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for [another] . . . activity" prohibited by 47 U.S.C. § 605(a). Amended Complaint at ¶ 26. However, very similar allegations have been held to be insufficient to create liability under § 605(e)(4). *See, e.g., Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 7, 2005). As the *Morales* Court noted, "several district courts have recognized [that] . . . § 605(e)(4) . . . is aimed at upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Id.* (internal citations and quotations omitted). Allegations of the sort contained in plaintiff's pleadings do not support a finding that defendants were "more than 'ultimate consumers' or 'end users' of an illegally modified device, as opposed to 'upstream manufacturers and distributors' of such a device" and, therefore, provide an insufficient factual basis for finding liability under § 605(e)(4). *Id.* Accordingly, to the extent that plaintiff's motion can be read as requesting damages for a violation of § 605(e)(4), this Court declines to award such damages.

2

case, plaintiff has elected to recover under § 605(a). Plaintiff's Memorandum of Law ("Plaintiff's Memo") at 5. Accordingly, this Court will proceed to determine the damages recoverable under that statute.

*Damages Under § 605*

Section 605(e) provides, *inter alia*, that any person aggrieved by a violation of § 605(a) can bring a civil action in district court, in which the court:

> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of . . . [§ 605(a)];
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). Subparagraph (C) permits the recovery of either actual damages under (C)(i)(I), or statutory damages under (C)(i)(II). Plaintiff requests that this Court award statutory damages. *See* Plaintiff's Memo at 5.

The statutory damages provision, § 605(e)(3)(C)(i)(II), provides, in pertinent part:

> [T]he party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .

In addition, § 605(e)(3)(C)(ii) states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [§ 605(a)] . . . .

Although § 605 provides little guidance as to how to set damages within the statutory range, "courts in this circuit have relied upon one of two methods of calculating statutory

damages in cases involving the unauthorized receipt and exhibition of pay-per-view events." *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB)(KAM), 2005 WL 2476264, at *6 (E.D.N.Y. Oct. 7, 2005) (Report and Recommendation of Matsumoto, M.J.) (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999)). First, in cases where the exact number of patrons is unknown, courts have awarded flat sums based on what the court "considers just." *See*, *e.g.*, *Entertainment by J & J, Inc. v. Suriel*, No. 01 Civ. 11460 (RO), 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000 in statutory damages); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages). Second, "[i]n cases where there is uncontradicted evidence of the number of patrons viewing the match in the establishment, courts have . . . multiplied the number of patrons by a set sum," and have awarded that amount "plus any cover charges or other profits attributable to the unauthorized viewing." *Morales*, 2005 WL 2476264, at *6. Although the "set sum" varies widely, with some courts awarding as little as $20, *see Time Warner Cable v. Sanchez*, No. 02 Civ. 5855 (GBD)(FM), 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003), and some courts awarding as much as $300, *see Garden City Boxing Club, Inc. v. Salcedo*, No. 04 Civ. 5027 (DFE), 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005), many courts have found $50 to be the appropriate amount. *See*, *e.g.*, *Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Services, Inc.*, No. CV-01-3945 (RR), 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002); *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 490; *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997); *Cablevision Sys. Corp. v. 45 Midland Enter., Inc.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994).

Although Plaintiff's Memo notes that Magistrate Judge Matsumoto (who was never assigned to this case) has typically set statutory damages under 605(e)(3)(C)(i)(II) based on a

patron count multiplied by $55 per patron or using the licensing fee[,] whichever is higher," Plaintiff's Memo at 7, plaintiff urges this Court to award "the maximum amount of statutory damages under 605(e)(3)(C)(i)(II), $10,000." Plaintiff's Memo at 8. Plaintiff suggests that this amount is justified because defendants have "pirated more than one event." *Id.* at 7.

This Court rejects this argument for two reasons. First, statutory damages are not intended to fine defendants, but to compensate plaintiffs for the money lost due to the defendants' infringing activities. To be sure, § 605(e) aims to deter defendants from further infringement. However, it provides another mechanism – the enhanced damages discussed below – for accomplishing that end.

Second, plaintiff inexplicably neglects to mention that defendants have been sued in seven other actions, even though three of these actions are (or were) prosecuted by plaintiff's counsel herself. In each of these actions, statutory damages were or will be awarded. Therefore, awarding the maximum statutory damages in each case simply because defendants have engaged in other infringing activities would result in vast overestimation of damages.

This Court agrees with plaintiff, however, that the approach plaintiff ascribes to Magistrate Judge Matsumoto is entirely reasonable. Plaintiff has introduced evidence that the residential price for viewing the Program was $54.95. Plaintiff's Affidavit for Default at ¶ 12.B. In addition, plaintiff has provided a "Piracy Affidavit," attached as Exhibit D to Plaintiff's Affidavit for Default, in which an investigator, Joseph W. Descovich, states that he visited the Establishment around 12:18 a.m. on November 28, 2004, and observed 40 patrons and a television displaying the main event of the Program. In accordance with Judge Matsumoto's methodology, this Court will multiply the number of patrons, 40, by the "residential price" of $54.95, to calculate the statutory damages: $2,198.

5

Plaintiff is also entitled to enhanced damages. It is beyond question that the § 605(a) violation "was committed willfully and for purposes of direct or indirect commercial advantage." § 605(e)(3)(C)(ii). After all, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Googies Luncheonette*, 77 F. Supp. 2d at 490. However, in awarding enhanced damages, courts have borne in mind that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006).

In order to determine the amount of enhanced damages to award in this case, this Court will take into consideration Guerra's history of infringement and the amount of enhanced damages previously awarded. Guerra was first sued under §§ 553 and 605 in October 2003, in connection with the unlawful interception and exhibition of the closed-circuit broadcast of a soccer match. In a Report and Recommendation dated February 3, 2005, Magistrate Judge Matsumoto found that there was insufficient evidence that Guerra had acted for purposes of direct or indirect commercial advantage and, therefore, recommended that Judge Gershon not award enhanced damages. *See Innovative Sports Marketing, Inc. v. Guerra*, No. 03-CV-5394 (NG)(KAM), slip op. at 8 (E.D.N.Y. Feb, 3, 2005). On February 17, 2005, Judge Gershon adopted Magistrate Judge Matsumoto's Report and Recommendation.

On March 9, 2005, Guerra was sued under §§ 553 and 605 for a second time. The complaint in this second action – *Garden City Boxing Club, Inc. v. Guerra*, No. 05-CV-1298 (DLI)(MDG) – alleged the interception and exhibition of the closed-circuit broadcast of a September 18, 2004, boxing match which occurred almost 11 months after defendants had been

6

sued by Innovative Sports Marketing, but before Magistrate Judge Matsumoto had issued her Report and Recommendation in that case. On March 6, 2006, Magistrate Judge Go recommended that the Court award enhanced damages in the amount of three times the statutory damages. *Garden City Boxing Club, Inc. v. Guerra*, No. 05-CV-1298 (DLI)(MDG), slip op. at 11 (E.D.N.Y. Mar. 6, 2006). Judge Irizarry adopted that recommendation and awarded enhanced damages of $6,000.

On January 11, 2006, Guerra was sued under §§ 553 and 605 yet again, this time in connection with an infringement alleged to have occurred on July 16, 2005 – more than four months *after* the judgment was entered in *Innovative Sports Marketing*. On July 6, 2006, Magistrate Judge Levy recommended that enhanced damages be awarded in the amount of four times the statutory damages. *J & J Sports Productions, Inc. v. Guerra*, No. 06-CV-164 (CPS)(RML), slip op. at 8-9 (E.D.N.Y. July 6, 2006). Judge Sifton adopted that recommendation and awarded damages of $4,000.

In light of these prior cases, this Court determined in *Kingvision Pay-Per-View, Ltd. v. Guerra*, No. 05-CV-4087 (SLT)(SMG) (decided herewith), that it was appropriate to award enhanced damages in the amount of three times the statutory damages in cases in which Guerra committed the infringement before the judgment was entered in *Innovative Sports Marketing*, and four times the statutory damages in cases in which the infringement occurred after that March 1, 2005, judgment. In this case, the infringement took place in November 2004 – well before judgment was entered in *Innovative Sports Marketing*. Accordingly, this Court will award three times the statutory damages in this case. Since the statutory damages are $2,198, this Court will award $6,594 in enhanced damages.

The total amount of enhanced damages in this case and the four other cases decided herewith – *J & J Sports Productions, Inc. v. Guerra*, No. 06-CV-3382 (SLT)(SMG), *Kingvision Pay-Per-View, Ltd. v. Guerra*, No. 05-CV-4087 (SLT)(SMG), *Kingvision Pay-Per-View, Ltd. v. Guerra*, No. 06-CV-441(SLT)(VVP), and *Kingvision Pay-Per-View, Ltd. v. Guerra*, No. 06-CV-5472 (SLT)(SMG) – is $22,844. This Court recognizes that Cevicheria Los Guerra is a small business, and has repeatedly opined that enhanced damages of $10,000 should be adequate to deter similar small businesses from further infringement. *See Kingvision Pay-Per-View, Ltd. v. Caffe Del Popolo*, No. 05-CV-5631 (SLT)(JO), 2007 WL 433322, at *3 (E.D.N.Y. Feb. 6, 2007); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 64 (E.D.N.Y. 2006). However, the $10,000 in enhanced damages awarded against Guerra to date has proven not to be an adequate deterrent. Accordingly, this Court has little choice but to substantially increase the damages in the hope that such hefty damages will dissuade Guerra from continuing to intercept and unlawfully exhibit closed-circuit television programming.

*Pre-Judgment Interest*

Plaintiff's Memo also requests that this Court, in its discretion, award pre-judgment interest on the statutory and enhanced damages. See Plaintiff's Memo at 9. Plaintiff does not cite to a single case in support of this request.

The district courts in this circuit are split on the issue of whether pre-judgment interest is appropriate in these cases. Some courts have granted pre-judgment interest at a rate of nine percent pursuant to N.Y. C.P.L.R. § 5004. *See*, *e.g.*, *Kingvision Pay-Per-View, Ltd. v. Ruiz*, No. 04 Civ. 6566 (DC), 2005 WL 589403, at *3 (S.D.N.Y. Mar. 9, 2005); *Morales*, 2005 WL 2476264, at *10 (Report and Recommendation of Matsumoto, M.J.); *Kingvision Pay-Per-View*,

*Ltd. v. Recio*, 02 Civ. 6583 (JSM)(RLE), 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (Report and Recommendation of Ellis, M.J.). However, other courts have declined to award such interest. *See*, *e.g.*, *CSC Holdings, Inc. v. Khrisat*, No. 04 CV 8592 (LBS)(RLE), 2005 WL 3030838, at *6 (S.D.N.Y. Nov. 8, 2005) (Report and Recommendation of Ellis, M.J.); *Garden City Boxing Club, Inc. v. Rosado*, No. CV-05-1037 (DLI)(JMA), 2005 WL 3018704, at *5 (E.D.N.Y. Oct. 6, 2005) (Report and Recommendation of Azrack, M.J.); *Kingvision Pay-Per-View, Ltd. v. Batista*, CV-05-0614 (RJD)(JMA), 2005 WL 2999427, at *5 (E.D.N.Y. Oct. 6, 2005) (Report and Recommendation of Azrack, J.); *Kingvision Pay-Per-View Ltd. v. Olivares*, 02 Civ. 6588 (JES)(RLE), 2004 WL 744226, at *5 (S.D.N.Y. April 5, 2004) (Report and Recommendation of Ellis, M.J.).

In *Autar*, this Court carefully reviewed the conflicting case law and concurred with Magistrate Judge Azrack's view, expressed in *Rosado* and *Batista*, that those cases denying pre-judgment interest are better reasoned. *Autar*, 426 F. Supp. 2d at 64-65. *Ruiz* grants pre-judgment interest without discussion. *Recio* simply cites to cases decided by courts in other circuits, while *Morales* discusses only the rate to be awarded, rather than the question of whether pre-judgment interest should be awarded in the first place.

In contrast, *Khrisat* and *Olivares* – both of which are recent cases authored by the same jurist who decided *Recio* – contain a lengthy and persuasive analyses of why pre-judgment interest should not be available. In *Olivares*, which is cited with approval in *Rosado* and *Batista*, Magistrate Judge Ellis reasoned that pre-judgment interest was not recoverable because New York law does not award pre-judgment interest on punitive damages, and damages under § 605 are "analogous to punitive damages in that they are designed to deter others from similar

infringing activity." *Olivares*, 2004 WL 744226, at *5. Because this Court agrees with Judge Ellis' reasoning, pre-judgment interest is denied.

***Attorneys' Fees and Costs***

Section 605(e)(3)(B)(iii) expressly provides that a court "shall direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails." Relying on this language, courts in this Circuit have repeatedly held that "under Section 605 the award of costs and attorneys' fees is mandatory." *Polanco*, 2006 WL 305458, at *4; *see also Morales*, 2005 WL 2476264, at *9. However, a party seeking attorneys' fees must nonetheless "support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done." *Morales*, 2005 WL 2476264, at *9 (internal quotations and citations omitted).

In this case, plaintiff's counsel has provided the required documentation. This Court has fully reviewed the time records and finds that 4.13 of the 4.75 hours spent on this case by the attorney, and 1.25 of the 2.25 hours spent by a paralegal, to be reasonable. The remaining .62 hours of attorney's time and one hour of paralegal's time was spent in connection with amending the complaint to rectify plaintiff's counsel's inadvertent omission of certain allegations concerning Guerra.

Although plaintiff's counsel has not attached a copy of her *curriculum vitae*, this Court is aware, based on its own research, that plaintiff's counsel is very experienced in handling cases of this sort. Her fee of $200 per hour, and the $75 per hour fee she charges for her paralegal's time, are both well within the range awarded in this district. *See*, *e.g.*, *Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for

partners; $100 to $150 for junior associates and $200 to $250 for senior associates" and from $60 to $75 for paralegals). Accordingly, plaintiff is awarded attorneys' fees totaling $919.75.

With respect to costs, plaintiff is entitled to recover both the $250 filing fee and the $200 it cost to serve the summons and complaint on defendants. However, there is a substantial question as to whether plaintiff is entitled to recover the fee charged by the auditor who visited the Establishment in the early morning of November 28, 2004.

A plaintiff is entitled to recover its "full costs" under § 605(e)(3)(B)(iii). As this Court has noted in prior opinions, "the 'full costs' permitted under § 605(e)(3)(B)(iii) both differ from, and can exceed, the 'taxable costs' recoverable under 28 U.S.C. § 1920." *Autar*, 426 F. Supp. 2d at 67; *Kingvision Pay-Per-View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 510 (E.D.N.Y. 2006). Thus, while investigative fees are not taxable costs, courts nonetheless have the power under §605(e) to award such fees as costs. *See International Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 918 (W.D.N.Y. 1997).

Even though the awarding of "full costs" is mandatory, *see*, *e.g.*, *Polanco*, 2006 WL 305458, at *4, a court is not required to award such fees. *Noel*, 982 F. Supp. at 918. In order to recover investigative costs, a plaintiff must make a showing similar to that required to recover attorneys' fees. *Id.* ("a request for investigative fees pursuant to § 605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected"). Thus, a plaintiff must document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." *Id.*

In this case, plaintiff's Attorney's Affidavit of Costs and Fees alleges that plaintiff paid $450 in "Investigation Fees." However, the investigator's invoice, attached as Exhibit D to

Plaintiff's Affidavit for Default, indicates that plaintiff paid the investigator only $350. Moreover, that invoice, which states only that plaintiff paid $350 for "Observation and 2 photos" of the Establishment, is insufficient to permit recovery of even that lesser amount. Plaintiff has not adduced any evidence concerning the investigator's qualifications or hourly rate. Accordingly, this Court has no basis for assessing the reasonableness of this rate.

Even if this Court were to assume that Mr. Descovich, like other investigators employed by plaintiff, charged $350 per hour, it still would not conclude that the investigator's fees sought by plaintiff are reasonable. A rate of $350 per hour would exceed the rate usually awarded to experienced attorneys in this district. *See*, *e.g.*, *LaBarbera v. J.E.T. Resources, Inc.*, 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) (rates of $250 to $350 per hour are unreasonably high for legal services in this district). In addition, this Court would have no basis for determining how Mr. Descovich spent the majority of the hour for which he charged plaintiff. The investigator's own "Piracy Affidavit" indicates that the investigator did not even enter the Establishment, but simply stood outside the locked front door for a minute, peering through a small part of the glass door. Mr. Descovich returned to Cevicheria Los Guerra that afternoon and took two photographs of the exterior of the Establishment. In light of the poor quality of the two photographs attached to the Piracy Affidavit, it seems highly unlikely that the photography took 59 minutes.

Because of these deficiencies in the evidence concerning the investigative fees, this Court declines to award them as costs. Accordingly, plaintiff is hereby awarded costs of $450.00.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a default judgment is granted. Defendants Carlos M. Guerra and Cevicheria Los Guerra shall be jointly and severally liable to

12

plaintiff for $2,198 in statutory damages pursuant to § 605(e)(3)(C)(i)(II); $6,594 in enhanced damages pursuant to § 605(e)(3)(C)(ii); $919.75 in attorneys' fees and $450 in costs. Accordingly, the Clerk of Court is directed to enter judgment in favor of plaintiff and against these defendants, jointly and severally, in the total amount of $10,161.75.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
February 16, 2007